**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARTURO MARTINEZ, ) | No. CV 05-3512-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| MARICOPA COUNTY, et al., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Defendants Maricopa County and Sheriff Joseph M. Arpaio move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendants argue that Plaintiff's state law claims should be dismissed because Plaintiff failed to timely file an adequate notice of claim as required by Arizona Revised Statutes section 12-821.01 (2003). Defendants also move to dismiss Plaintiff's federal claims as to Defendant Maricopa County on the grounds that Plaintiff failed to establish a theory of municipal liability upon which his claims are predicated.

**I. BACKGROUND**

On August 11, 2004, Plaintiff, Arturo Martinez, was a pre-trial detainee at a jail facility located in Maricopa County. Plaintiff alleges that approximately one hour prior to his court appearance, he was ordered by detention officers to put on "prisoner's stripes." When he refused to do so, Plaintiff alleges that officers Bowman and Haider, attacked him with their stun weapons, causing Plaintiff to lose all control over his bladder, bowels, and muscles.

Plaintiff also alleges that soon thereafter, officers Urena and Rose, joined in and assisted the two officers in further assaulting Plaintiff until he was fully incapacitated.

Plaintiff initially filed his complaint in state court on August 10, 2005, raising both state and federal claims. In addition to the four officers involved in the incident, Plaintiff also named Maricopa County and Sheriff Joe Arpaio as Defendants in the complaint.[1] The action was subsequently removed by Defendants to this Court. Plaintiff filed a Motion to File Amended Complaint, which was granted by the Court.

Plaintiff raises four claims in his complaint, two of which are federal claims and two of which are state claims. In his federal claims, Plaintiff asserts that the officers used excessive force against him, thereby violating his due process rights under the Fourteenth Amendment and his civil rights under 42 U.S.C. § 1983 (2000). Plaintiff also raises an equal protection claim, alleging that he was singled out for abuse based on his race or ethnicity. Additionally, Plaintiff raises two state tort claims for assault and intentional infliction of emotional distress.

Defendants, Maricopa County and Sheriff Joe Arpaio, have moved to dismiss Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants argue that the state claims should be dismissed because Plaintiff failed to timely file a notice of claim against Defendants after the cause of action accrued as A.R.S. section 12-821.01 (2003) requires. Alternatively, Defendant, Maricopa County, argues that Plaintiff should not be able to proceed with his state claims against the County under a theory of *respondeat superior* liability because the incident arose out of the actions of four officers employed at the jail facility and the County, itself, has no right to control the operation of its jails. Defendants, similarly, argue that

---

[1] This Court dismissed Officers Urena, Rose, Haider, and Bowman from the action for Plaintiff's failure to serve them as required by Federal Rule of Civil Procedure 4(m). Consequently, Maricopa County and Sheriff Joe Arpaio are the only remaining defendants in the action.

- 2 -

Plaintiff has failed to establish a claim of municipal liability and, as such, his federal claims against Maricopa County should be dismissed.

## II. DISCUSSION

*Unenumerated 12(b) Motion to Dismiss - State Claims*

In their Motion to Dismiss, Defendants claim that because Plaintiff failed to satisfy the notice requirements of A.R.S. section 12-821.01(A) (2003), his state law claims against Defendants are barred. Section 12-821.01(A) provides that persons with claims against a public entity or a public employee must, within 180 days after the accrual of the cause of action,[2] file a notice of claim with the person(s) authorized to accept service for the public entity or public employee. The claim must contain facts that will sufficiently enable the public entity or public employee to appreciate the basis of liability upon which the claim is founded. A.R.S. § 12-821.01(A). A specific amount for which the claim can be settled must also be included in the claim, along with facts supporting that amount. *Id.* Failure to file a notice of claim meeting the requirements of section 12-821.01(A) within 180 days after the accrual of the cause of action bars a claimant from proceeding on his or her state law claims against a public entity or public employee. *Id.*

Although Defendants moved to dismiss Plaintiff's state law claims under Federal Rule of Civil Procedure 12 (b)(6) for failure to state a claim upon which relief may be granted, the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Although *Wyatt* involved a § 1983 claim in the context of the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, the guidelines established with regard to the exhaustion of administrative remedies and the Court's ability to look beyond

---

[2]Under A.R.S. section 12-821.01(B), "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage."

- 3 -

1  the pleadings are equally applicable in the case at hand. The requirement of filing a notice
2  of claim with the state is mandatory and must be complied with before a plaintiff can
3  maintain a cause of action against it. *Pritchard v. State*, 788 P.2d 1178, 1183 (Ariz. 1990).
4  Furthermore, the statutory notice requirements with respect to filing a notice of claim are
5  procedural, rather than jurisdictional. *Id.* at 1181, 1183. Therefore, Defendants' Motion to
6  Dismiss will be treated as an unenumerated 12(b) motion, permitting this Court to look
7  beyond the pleadings to consider the allegations and exhibits contained within Defendants'
8  Motion and Plaintiff's Response.

9  Defendants argue that Plaintiff did not file a sufficient notice of claim within the
10 statutorily required 180 days, thus barring his state law claims against Defendants. Given that
11 the cause of action accrued on August 11, 2004, Plaintiff had until February 7, 2005 to serve
12 a notice of claim upon each Defendant named in his Amended Complaint. Defendants
13 maintain, however, that Plaintiff did not serve a notice of claim on Defendant Sheriff Joe
14 Arpaio until March 3, 2005. Affidavit of Margaret Difrancesco. Furthermore, no such notice
15 was ever served upon Defendant Maricopa County. Affidavit of Fran McCarroll. Plaintiff,
16 however, offers as evidence a letter dated November 17, 2004,[3] which he argues constitutes
17 an adequate notice of claim. The question this Court must decide, then, is whether the
18 November 17 letter sufficiently meets the requirements set out under section 12-821.01.

19 The purpose behind the notice of claim statute "is to allow the public employee and
20 his employer to investigate and assess their liability, to permit the possibility of settlement
21 prior to litigation and to assist the public entity in financial planning and budgeting." *Crum*
22 *v. Superior Court*, 922 P.2d 316, 317 (App. Div. 1996). To best effectuate the purpose of the
23 statute, section 12-821.01 requires that the notice contain (1) enough information to enable
24 the public entity to intelligently ascertain the nature of the claimant's loss so that it can
25 conscientiously allow or disallow the claim and (2) an approximation of damages in the form
26 of a specific amount for which the claim can be settled. *See Howland v. State*, 818 P.2d 1169,

27
28         [3]The letter is addressed only to the Maricopa County Sheriff's Office.

- 4 -

1175 (App. Div. 1991); *State v. Brooks*, 534 P.2d 271, 274-75 (App. Div. 1975). The adequacy of a notice of claim, then, turns on whether the notice meets *both* of these requirements. *See Crum*, 922 P.2d at 318 (holding that plaintiff's letter to county attorney did not constitute sufficient notice of claim because the letter contained no reference to the negligent infliction of emotional distress claim raised in plaintiff's complaint and failed to include a specific amount of damages being sought); *Howland*, 818 P.2d at 1175 (holding that the amount plaintiff was requesting in the notice of claim was not supported by the bare assertions made by plaintiff in a letter to defendants where the letter failed to specifically describe the factual allegations made in subsequent complaint); *Brooks*, 534 P.2d at 274-75 (holding that plaintiff's letter directed to Attorney General failed to meet the requirements of the notice of claim statute because, although the letter contained sufficient information to enable the state to investigate its liability, it did not include a specific amount for which the claim could be settled).

The November 17, 2004 letter, written by Plaintiff's counsel and directed to the Maricopa County Sheriff's Office, merely states that counsel has been retained on a matter that arose on August 11, 2004. Yet, beyond stating that "Maricopa Sheriff's deputies fired their Taser weapons and struck Mr. Martinez while he was in a holding cell," the letter provides very little detail about the incident. For example, one of the central factual allegations made in Plaintiff's Amended Complaint is that Plaintiff was assaulted by the detention officers because he resisted their order to wear "prisoner's stripes." Yet the November 17 letter makes no reference to this allegation. The use of a stun weapon is not uncommon in detention facilities. Often, detention officers have no other choice but to use such force, especially in cases involving violent and unruly detainees. But without stating the reasons why this force was used on Plaintiff, the letter does not provide sufficient notice of a claim for which the public entity or employer should be held liable. Nor does the November 17 letter make reference to any theory of liability contained in Plaintiff's Amended Complaint, such as the state law tort claims for assault and infliction of emotional distress. Even if Plaintiff had provided sufficient detail about the incident, the letter would still be

- 5 -

1  defective as a notice of claim because Plaintiff failed to include a specific amount for which
2  he was willing to settle his claim.

3  It appears the real intent of the November 17 letter was, not to inform Defendants of
4  a notice of claim, but to request that certain evidence be produced by the Maricopa County
5  Sheriff's Office.[4] This is further evidenced by language contained at the end of the letter,
6  which reads as follows: "I anticipate that we will submit the mandatory claim form very
7  shortly after receiving the above requested information." Plaintiff's November 17 letter, thus,
8  does not constitute a sufficient notice of claim as required under A.R.S. section 12-821.01
9  because it fails to set out in sufficient detail the nature of Plaintiff's loss and does not contain
10 a specific amount for which settlement of the claim could be reached.

11 Plaintiff argues that this Court should, "in the interest of justice and equity," consider
12 his November 17 letter as sufficient notice of claim to *all* parties named in his Amended
13 Complaint, thus bringing his notice of claim within the statutorily required 180 days. Plaintiff
14 maintains that the Maricopa County Sheriff's Office, in failing to respond to the requests
15 made in the November 17 letter, withheld vital information, without which Plaintiff could
16 not proceed with his notice of claim. Plaintiff, thus, contends that any delay in service of his
17 notice of claim, was not of his own doing, but was a result of the "stall techniques" carried
18 out by the Sheriff's Office. Defendants contend, however, that the Sheriff's Office processed
19 the request as it would any other in the normal course of its business.

20 In *Pritchard*, the Arizona Supreme Court held that the time requirement in the notice
21 of claim statute[5] was procedural, not jurisdictional. 788 P.2d at 1184. The court further held

---

[4] Plaintiff specifically requested the production of: any audio or video recording of the incident, any force reports documenting the use of a taser weapon, a list of inmates who were in the vicinity at the time of the incident, and any medical records arising out of the incident.

[5] It is worthy to note that the statute, in its former version, specifically created an exception for excusable neglect. Under former section 12-821, a claim not filed within statutory period after the cause of action has accrued is barred,
   except upon a showing of excusable neglect if the action is brought within the
   otherwise applicable period of limitations, provided that if there is no

- 6 -

1 that issues of excusable neglect or incompetence under the statute were to be resolved like 2 any other disputed issues of fact. *Id.* Although disputed issues of fact are usually the province 3 of the jury, the court may, in an unenumerated motion to dismiss, look beyond the pleadings 4 and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20. Although certain evidence 5 was not within Plaintiff's counsel's possession at the time the November 17 letter was 6 drafted, counsel, based solely on Plaintiff's recollection of the incident, could have drafted 7 a notice of claim sufficiently laying out the nature of Plaintiff's loss. Counsel could have also 8 approximated the extent of Plaintiff's loss in arriving at a specific amount for which the 9 claim could be settled. After all, the notice of claim merely serves "to preserve the claim for 10 later proceedings." *Hernandez v. State*, 35 P.3d 97, 101 (Ariz. App. Div. 2001). In *City of* 11 *Tucson v. Fleischman*, 731 P.2d, 634, 638 (Ariz. App. Div. 1986), the Arizona Court of 12 Appeals held that counsel's need to investigate client's claim, will not render the failure to 13 file a timely notice of claim excusable. Here, Plaintiff's counsel knew or should have known 14 about A.R.S. section 12.821.01 and its requirements and accordingly filed an adequate notice 15 of claim. *See Fleischman*, 731 P.2d at 638 (charging the plaintiff's attorney with constructive 16 knowledge of the notice of claim statute).

17 Plaintiff did not serve Defendant Sheriff Arpaio with a notice of claim until March 3, 18 2005, nearly a month after he was statutorily required to under A.R.S. section 12-821.01. 19 Furthermore, contrary to Plaintiff's argument, the letter dated November 17, 2004 does not 20 constitute a sufficient notice of claim as required by section 12-821.01. As such, Plaintiff is 21 barred from proceeding with his state law tort claims against Sheriff Arpaio. Because 22 Defendant Maricopa County was never served with a notice of claim, Plaintiff's state law 23 claims as to Maricopa County are similarly barred. "[A]ny action against a public entity or

---

26 excusable neglect, and if the absence of excusable neglect is because of the conduct of the claimant's attorney, then the action shall proceed, and the public entity and public employee shall have a right of indemnity against the claimant's attorney for any liability assessed in the action.
28 This proviso, however, has since been repealed by the legislature.

1 public employee must be preceded by notice of the claim to each entity and each employee
2 named in the subsequent lawsuit." *Johnson v. Superior Court*, 763 P.2d 1382, 1385 (Ariz.
3 App. 1988). Because this Court has dismissed the state law claims as to both Defendants, it
4 need not decide Defendants' alternative argument that the state law claims be dismissed as
5 to Maricopa County because Plaintiff has failed to state a claim of *respondeat superior*
6 liability.

7 *12(b)(6) Motion to Dismiss for Failure to State a Claim - Federal Claims*

8 Defendants also move, pursuant to Rule 12(b)(6), to dismiss Plaintiff's federal claims
9 against Maricopa County for failure to state a claim upon which relief can be granted.
10 Specifically, Defendants assert that Plaintiff has failed to state a municipal liability claim.

11 A court may not dismiss a complaint for failure to state a claim "unless it appears
12 beyond doubt that the plaintiff can prove no set of facts in support of his claims which would
13 entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). "The federal
14 rules require only a 'short and plain statement of the claim showing that the pleader is
15 entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting
16 Fed. R. Civ. P. 8(a)). "The Rule 8 standard contains a powerful presumption against
17 rejecting pleadings for failure to state a claim." *Id.* at 249 (internal quotation marks omitted).
18 "All that is required are sufficient allegations to put defendants fairly on notice of the claims
19 against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Indeed, though "'it
20 may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . that
21 is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236
22 (1974)). "'The issue is not whether the plaintiff will ultimately prevail but whether the
23 claimant is entitled to offer evidence to support the claims.'" *Id.*

24 A motion to dismiss for failure to state a claim, therefore, is disfavored and rarely
25 granted. *Id.* at 248-49. As such, when analyzing a complaint for failure to state a claim, "[a]ll
26 allegations of material fact are taken as true and construed in the light most favorable to the
27 non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the
28 Court must assume that all general allegations "embrace whatever specific facts might be

- 8 -

necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), cert. denied, 515 U.S. 1173 (1995) (citations omitted). Legal conclusions, however, couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a) have not been met. *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1165 (C.D. Calif. 2002).

In his Amended Complaint, Plaintiff alleges that Maricopa County "may be held independently or vicariously liable for the wrongful conduct of its officers and employees." Defendants, however, contend that the allegations of municipal liability made in Plaintiff's Amended Complaint are without support. A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-92 (1978) (Section 1983 "cannot be easily read to impose liability vicariously on [municipalities] solely on the basis of the existence of an employer-employee relationship with a tortfeasor."); *see also McMillian v. Monroe County*, 520 U.S. 781, 783 (1995) (applying the *Monell* standard to a county). Thus, in order to establish municipal liability, a plaintiff must show a policy, practice or custom of the municipality which permitted the alleged constitutional violation to occur. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).

In *Gibson v. County of Washoe*, 290 F.3d 1175, 1185-87 (9th Cir. 2002), the Ninth Circuit stated that there are two routes which can "lead to the conclusion that a municipality has inflicted a constitutional injury." Under the direct route to municipal liability, a plaintiff can establish that the municipality violated his constitutional rights by showing that it acted with the requisite "state of mind" implicating the underlying violation just as the plaintiff would have to prove if he was alleging that a natural person had violated his rights. *Id.* at

1185.[6] Under the indirect route to municipal liability, a plaintiff does not have to establish that the municipality itself violated his rights under the Constitution or directed its employees to do so. *Id.* at 1186. Rather, "a plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." *Id.* However, bearing in mind that a municipality cannot be held liable under a theory of *respondeat superior*, "the plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Id.* Deliberate indifference can be established by showing that the municipality had actual or constructive notice that the omission would lead to the constitutional violation. Problems of proof, however, become much more difficult when a plaintiff's rights have been violated by a municipal employee acting under a constitutionally valid policy. *Id.*

Plaintiff maintains that since Maricopa County is responsible for the screening, training and supervision of all employees hired to handle pre-trial detainees in the custody of its jail system, it must ensure that its employees follow established policies and procedures which govern how the detainees are to be treated. In his Amended Complaint, Plaintiff alleges that the officers' use of excessive force was a result of the inadequate training that they received under Maricopa County's employee training policy. Plaintiff further alleges that, because its policies were poorly implemented, Maricopa County fostered an environment encouraging its employees to engage in discriminatory acts against persons of color.

In *Canton v. Ohio*, 489 U.S. 378, 388 (1989), the Supreme Court held that the "inadequacy of police training" may result in a municipality being held liable under § 1983

---

[6] An example of this direct path to municipal liability would be a city's policy of discriminating against pregnant women in violation of the Fourteenth Amendment. *Id.* at 1186.

"where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." An omission, such as failure to train, reflects a "deliberate" or "conscious" choice on a municipality's part and, as such, may constitute a policy or custom creating liability for the municipality. *Id.* at 389. However, mere allegations that an existing training program constitutes a "policy" for which the municipality is responsible will not suffice. *Id.* As contemplated by the *Canton* Court,

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. . . . It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91 (internal citations omitted).

Although the pleading requirements of Rule 8(a) are minimal, Plaintiff's allegations are exactly the type of legal conclusions, couched as factual allegations, that cannot defeat a motion to dismiss. Plaintiff merely infers from the officers' conduct that Maricopa County has an inadequate training program for its employees, yet does not go further to explain the training program's inadequacy. Nowhere in the complaint does Plaintiff make any factual allegations concerning the level of force that officers in Maricopa County are trained to use in situations such as that involved here. It is certainly reasonable that officers in the setting of a jail would be trained on the appropriate use of force in situations that arise involving pre-trial detainees. Yet without more facts, this Court cannot conclude that Maricopa County had an inadequate training program which caused Plaintiff's constitutional rights to be violated. For all that is alleged, Maricopa County could have a perfectly sound training program for its officers, which just was not adhered to by the officers in the instant case.

Plaintiff's equal protection claim also cannot survive dismissal. Although Plaintiff alleges that Maricopa County fostered racism by encouraging its officers to engage in

- 11 -

conduct exhibiting a discriminatory intent against persons of color, he fails to allege any facts tending to support the general legal conclusion that an animus against persons of color motivated his treatment by the officers. Nor does Plaintiff allege any facts establishing that the use of force was disproportionately and routinely applied by Maricopa County officers to persons in the suspect category. Again legal conclusions, without factual support, cannot overcome a motion to dismiss. Although he does not do so explicitly, Plaintiff, in both federal claims, is trying to hold Maricopa County liable under a theory of *respondeat superior*. This is explicitly prohibited by *Monell*.

### III. CONCLUSION

Accordingly, because Plaintiff does not allege any facts which support his theory of municipal liability, his excessive force and equal protection claims under § 1983 are dismissed as to Defendant Maricopa County.[7] Additionally, the state claims will be dismissed due to the failure to comply with the notice of claim statute.

Therefore, IT IS ORDERED, that Defendants' Motion to Dismiss (DOC. # 15) is granted in its entirety, however, the Clerk of the Court shall not enter judgment at this time because the motion does not address the federal claims as they relate to Sheriff Arpaio. Thus, those claims will proceed to discovery.

DATED this 4th day of October, 2006.

_____
James A. Teilborg
United States District Judge

---

[7] Defendants did not move to dismiss the federal claims against Sheriff Arpaio.